No. 1,301.

The Citizens' Street Railway Company *v.* Lowe.

Negligence.—*Pleading, Sufficiency.—Failure to Allege Specific Facts.*— When the complaint characterizes the act from which the injury is charged to have resulted as having been done negligently, it is sufficient for demurrer without alleging the specific fact or facts constituting the negligent act.

Same.—*Running Car Against Wagon, Sufficiency of Allegation.—More Specific.*—In an action for damages occasioned by running a street railway car against plaintiff's wagon, whereby plaintiff was injured, the complaint is sufficient to withstand a demurrer if it be alleged that the motorman "negligently ran said car against the wagon." If the defendant desired a more specific allegation on this point he should move the court that it be so made.

Street Railway.—*Motorman, When Must Stop Car.—Frightened Horse and Vehicle on Track.*—A motorman may usually presume, when he sees a horse and vehicle approaching, that the driver will not attempt to cross the track in front of the moving car or otherwise come so near as to cause a collision; but when such motorman sees that the horse is frightened and the vehicle to which he is attached in front of the car upon the same track, and that the occupants of the vehicle are in apparent peril, due care requires that the car be stopped if it is possible to do so.

Same.—*Motorman Seeing Uncontrollable Animal on Track.—Slackening Speed.*—If a motorman perceive a horse attached to a vehicle, on the track in front of the car at some distance is uncontrollable, and may result in a collision, he must place the motive power of the car under his control to such an extent that the car can be easily stopped if necessary.

Judicial Notice.—*Rearing Child, Profit to Parent.*—The court can not take judicial notice that there is no financial profit in bringing up to manhood a child eleven years of age.

From the Hamilton Circuit Court.

*W. H. Latta, A. L. Mason, W. H. H. Miller, F. Winter* and *J. B. Elam*, for appellant.

*J. M. Bailey, W. J. Beckett* and *W. S. Doan*, for appellee.

Reinhard, J.—This action was instituted by the appellee against the appellant, a street railway company in

the city of Indianapolis, for the alleged negligent killing of appellee's son, eleven years old, who, at the time, was riding in an open vehicle, drawn by one horse, in company with two other persons, one of whom was the driver.

The court overruled a demurrer to the amended complaint, and this ruling constitutes the first error assigned and discussed.

It is averred, in the complaint, that the appellant owned and was operating a street railroad in the city of Indianapolis, Indiana, one division of which was operated and maintained upon Massachusetts avenue, extending northeast and southwest through the northern part of said city; that said avenue was, at the time of the performance of the negligent acts complained of, and for twenty years prior thereto, one of the most traveled thoroughfares for buggies, carriages and other conveyances and vehicles in said city; that horses and conveyances were constantly and continuously passing and repassing through said street or avenue; that appellant had constructed and maintained in said street, at said time, a double track, covering the entire center part of said street, the width or space occupied by said tracks being equal to or greater than the space between said tracks and the sidewalk along said avenue; that said double tracks extended from between and beyond Delaware street on the southwest and East street on the northeast, said last named street extending north and south through said city; that appellant had constructed its said double tracks or rails so that the inner flange or projection of the same was flat, and about three inches in width, said rails being especially convenient for the easy and comfortable passage of carriages, buggies and other conveyances, and prepared and constructed as aforesaid to facilitate travel thereon; that

the distance between the rails on each track was about the width of an ordinary conveyance, and the general public had for about twenty years, in passing over and upon said avenue, driven their vehicles and conveyances upon the rails of said tracks with the knowledge, consent and permission of the appellant; that at the time mentioned, by reason of the condition of said avenue between said tracks and the sidewalks along said avenue, on either or both sides of said tracks and extending from and between said Delaware and East streets, said avenue was not in a condition to be used and was not used by the traveling public; that said avenue, between the last named streets, except the space occupied by the tracks, was torn up, rough and uneven, and unfit and dangerous for travel, and had been abandoned by the general public as a highway for the time being, owing to the excavations made therein by said city preparatory to improving the same; that said tracks of appellant were used by the traveling public in passing to and fro in buggies, carriages and other conveyances, from the central part of the city to the north and southeast part thereof, and were the sole and only driveway between said Delaware and East streets along said avenue, and that the public generally used said tracks continuously as a driveway, with the knowledge, consent and permission of the appellant; that the street known as New Jersey street extends north and south, and the street known as Michigan street extends east and west through said city, and meet and intersect each other at an angle of ninety degrees at a point one square west of where said East street meets and intersects said avenue; that at the crossing of New Jersey and Michigan streets, aforesaid, there was placed an obstruction or fence across said streets to prevent any person from driving on to said avenue from

either side thereof, off either of the last above named streets; that said obstruction or fence had stood in the position and for the purpose aforesaid continuously and uninterruptedly for at least two weeks, and stood in said position and place at the time of the occurrence of the accident and injury hereinafter related, and that at that time the facts already recited were well known to the appellant.

Appellee further alleges that on the 20th day of July, 1892, his little son and servant Frank P. Lowe, a boy eleven years old, of bright mind and intelligence and of a strong and healthy constitution, without fault or negligence on the part of appellee, or said Frank's mother, or said Frank himself, and without fault or negligence on the part of those in whose care and custody he was left by the appellee, came upon said Massachusetts avenue at said East street, and without fault or negligence on the part of any of the above named persons, was riding in an open vehicle or conveyance drawn by a gentle and trusty horse, southwest on said avenue, and was upon the north track of appellant's said railroad approaching one of the appellant's cars, with due care and caution, upon the opposite or south track of said railroad, said car being drawn and propelled at the time with electricity, as a motor power, and said car was approaching appellee's said son Frank; that said Frank was approaching from the north east, the aforesaid crossing at the intersection of New Jersey and Michigan streets with said avenue, with due care and caution at the time appellant's said cars were approaching said crossing from the southwest; that appellant's said cars were then under the exclusive control and management of appellant's servants and employes, while approaching said crossing, as aforesaid, and when the injury to appellee's said son Frank occurred, as hereafter complained

of, "and said cars were being negligently run and managed by said defendant's servant, and by reason of the negligent management of said defendant's car, as aforesaid, the horse attached to the vehicle in which the said Frank was riding became frightened and unmanageable as aforesaid, and was in plain view of said car, and said defendant could see and observe the condition of said horse and the peril of said Frank for a long distance from said car and in front of the same, to wit: Three hundred (300) feet, and while the said horse was in the frightened and unmanageable condition, as aforesaid, defendants did negligently approach said horse, thereby so frightening said horse that it turned to the left and across the track upon which said car was negligently approaching, and defendant negligently ran said car against the wagon in which said Frank was riding," etc.

The remaining portion of the complaint relates to the injury inflicted and the damages sustained.

Assuming, as we must from the averments of the complaint, that the conveyance in which the appellee's decedent and son was riding was properly on the north track of the appellant's road, the question is whether the complaint charges any act of negligence on the part of the appellant or its servants. It is not shown in the complaint that the horse and vehicle were, at the time the horse became frightened, across the track in front of appellant's car. The mere fact that the horse appeared frightened and unmanageable at a distance of three hundred feet from the car, and that the motorman could see and observe his condition, would not of itself be a sufficient reason why the appellant was in duty bound to stop the car until the horse and vehicle had passed safely. But the fact that the motorman could see the condition of the horse and conveyance, and must, therefore, have known the peril of those riding in the ve-

hicle, is sufficient to place such motorman on his guard and to require him to place the motive power of his car under his control to an extent that the car could be easily stopped if necessary. The act of negligence charged in the complaint is the running of the car against the wagon while the same was across the track in front of him. It is not shown what distance the horse and vehicle were in front of the car when the negligent act of running the car against the wagon began, but if the motorman negligently approached and "negligently ran said car against the wagon," he must have been a sufficient distance from the wagon to have averted the collision if he had used proper care. It is true the aver-ment of the negligent act here is somewhat indefinite. Whether the horse was frightened by the sounding of the gong, or the noise of the wheels, or the rapid speed of the car, is not averred, and we may, therefore, conclude that there is no sufficient averment of negligence in the act of causing the horse to become frightened. But, assuming that the appellant or its servant, the motorman, was not guilty of any negligence in that respect, there still remains the allegation that he "negligently ran said car against the wagon," and it was this act which consti-tuted the immediate cause of the death of appellee's son. It is this latter averment in which the gist of the negli-gence charged is found. It is indefinite, we must grant, in failing to set forth the specific facts of the negligent act, but this is no ground for a demurrer.

Had the appellant moved to make the complaint more specific in this respect, the court would, doubtless, have sustained the motion, or, if not, the appellant could have had such ruling reviewed on appeal. But indefiniteness of the character indicated will not render the complaint so defective that it must go down before a demurrer based

The Citizens' Street Railway Company v. Lowe.

upon the ground that such complaint fails to state a cause of action.

The rules of good pleading, perhaps, required the draftsman of the complaint before us to set forth with certainty the facts underlying the negligent act charged, such as the distance the car was from the horse when the latter entered upon the track on which the car was running, and other facts showing that the motor could have been stopped after the horse and vehicle must have been seen by the motorman to be on the track in front of him. But these facts would only serve to demonstrate more particularly that the act complained of— the act of running the car against the vehicle—was negligent, and as it was already characterized as such, the particulars in which it was negligent are not essential to the statement of the cause of action, though they may have become so to satisfy a motion to make more specific.

In *Cincinnati, etc., R. R. Co.* v. *Chester,* 57 Ind. 297, the averment was that the plaintiff was injured without any fault, carelessness and negligence on his part, while a passenger on defendant's train in the car in which he was riding, which was, by the negligence of the defendant, her agents and employes, thrown from the track. The averments of negligence in that case were no more specific than those here, but the court held that the complaint was sufficient to withstand the demurrer, although not sufficient to withstand the motion to make more specific.

It has been repeatedly held by the courts in this State that when the complaint characterizes the act from which the injury is charged to have resulted as having been done negligently, the complaint is sufficient upon demurrer without alleging the specific fact or facts constituting the negligent act. *Anderson* v. *Scholey,* 114 Ind.

553; *Louisville, etc., R. W. Co.* v. *Jones*, 108 Ind. 551; *Pittsburgh, etc., R. W. Co.* v. *Hixon*, 110 Ind. 225; *Brookville, etc., Turnpike Co.* v. *Pumphrey*, 59 Ind. 78; *Coal Bluff Mining Co.* v. *Watts*, 6 Ind. App. 347; *Ohio etc., R. W. Co.* v. *Craycraft*, 5 Ind. App. 335.

In the case last cited the complaint charged ''that the defendant, without any fault or negligence on plaintiff's part, negligently and wrongfully ran its train over and upon the plaintiff's brown horse mule.'' In that case it was held that the averment was sufficient to withstand even a motion to make more specific.

In the case at bar the gist of the action is negligence in running the appellant's car against the vehicle while it and the horse attached to it were on the track in front of the car, and in a condition of great peril to the occupants of the vehicle, which must, by the exercise of reasonable diligence, have been known to the appellant's servant operating the car. Ordinarily, it is true, a motorman operating an electric motor car, who sees a horse and vehicle approaching, has a right to assume that the driver will not attempt to cross the track in front of the moving car or otherwise come so near as to cause a collision, but rather that he will avoid the same. But when the motorman, or those in charge of the car, see the frightened horse and the vehicle to which he is attached in front of such car upon the same track, and that the occupants of the conveyance are in apparent peril, due care requires that the car be stopped if it is possible to do so. In such a case it is required of those in charge of the motor to slacken the speed, and if necessary, to avoid injury, to stop the car entirely. *Muncie Street R. W. Co.* v. *Maynard*, 5 Ind. App. 372; *Ellis* v. *Boston, etc., R. R. Co.* (Mass.), 35 N. E. Rep. 1127; *Benjamin* v. *Holyoke Street R. W. Co.* (Mass.), 35 N. E. Rep. 95; *Marion Street R. R. Co.* v. *Carr*, 10 Ind. App. 200.

We think the averment that the appellant negligently ran the car against the wagon is a sufficient charge of negligence when construed in connection with the other averments in the complaint.

The argument of the appellant's learned counsel upon the question of the sufficiency of the complaint would be a very potent one had there been a motion to make more specific, but in view of the rule heretofore referred to, we are of opinion that appellant has not succeeded in establishing any error in connection with the ruling of the lower court upon the demurrer.

The only remaining assignment of error calls in question the sufficiency of the evidence to support the verdict of the jury.

There was evidence tending to prove all the averments of the complaint.

Appellant's counsel contend that the evidence does not tend to show that the horse was on the track in front of the car until just a moment before the car ran against the wagon. But we interpret the evidence differently. James Hale testified that he was in the wagon with the appellee's son, and the driver, when the injury occurred. He stated that the horse became frightened from the repeated sounding of the gong about three hundred feet from the car, and that when the horse "jumped from the track" the car was about two hundred feet away. He also testified that after the horse began to jump he kept going from one side to the other, and kept going faster all the time for about thirty feet; that when about two hundred feet from the car he turned across the track, and that before the car struck the wagon the horse had turned around on the track.

Jacob Demmy, the driver, testified that when he got near Michigan street he saw the car coming, which he supposed was then about two hundred and seventy-five

feet away, and that the horse commenced jumping from one side to the other, making lunges, backward and forward, which the horse kept up while the car was approaching; that the motorman was ringing the bell, and continued to do so until the car got within twenty or thirty feet of the wagon, when he turned right around on the up track, and ran up northeast right in front of the motor car.

There was other testimony of a similar character, but we see no benefit in setting it forth here.    Enough has been cited to show that the engineer in charge of the motor was in a position to see the peril of those riding in the wagon to which the frightened horse was attached, long enough before the collision to have avoided it, with due care.    Had he slackened the speed of the car when he must first have seen the horse's actions, he could doubtless have stopped the car after the horse jumped across, to, and upon, the south track in front of the car.    At least the jury had sufficient evidence from which they could draw such an inference, and the verdict having met the approval of the trial court, we can not say that there is no evidence for it to stand upon.

Nor do we think the driver can be charged with contributory negligence, even if such negligence could be imputed to the appellee's decedent—a question we need not decide.    See, however, *Town of Knightstown* v. *Musgrove*, 116 Ind. 121; *Town of Nappanee* v. *Ruckman*, 7 Ind. App. 361.

The facts alleged, with reference to the condition of the street and the habits of the general public in using the tracks with vehicles, etc., were substantially proved, and they showed a sufficient excuse for the occupancy of the north track by the driver.    It does not appear that he did anything that an ordinarily prudent man would not have done under like circumstances.

The final contention of appellant's counsel is that the damages are excessive.

The amount assessed by the jury was $1,300. Counsel ask us to decide that there is no financial profit in bringing up a child, and especially in a city, and without a home. . Of this, however, we can not take judicial cognizance. We suppose there may be a pecuniary profit in rearing a boy to manhood under some conditions and circumstances. The jury had before them sufficient evidence to authorize them to determine the question as they did, and we can not say that they transcended their prerogative in this respect.

Judgment affirmed.

Filed Dec. 11, 1894; petition for a rehearing overruled Feb. 19, 1895.