## Columbus Street Railway & Light Company *v.* Reap, by next friend.

[No. 6,121.    Filed December 19, 1907.]

Street Railroads.—*Negligence.*—*Evidence.*—Evidence that a boy left his horse untied standing beside the street railroad track; that such horse stood there until the street-car came opposite to it, when it became frightened and backed the delivery wagon to which it was hitched against such car, causing a collision and injuries to a companion boy riding in such wagon; that neither the inexperienced motorman operating the car nor the experienced motorman standing by his side saw anything to indicate that the horse would take fright; that the motorman stopped his car as soon as possible after he saw the fright of the horse and that he could not see the boy in the wagon, does not support a verdict that the company was guilty of negligence.

From Bartholomew Circuit Court; *Marshall Hacker,* Judge.

Action by Philip H. Reap, by his next friend, against the Columbus Street Railway & Light Company. From a judgment on a verdict for plaintiff for $200, defendant appeals. *Reversed.*

*Francis T. Hord* and *James F. Cox,* for appellant.
*C. E. Custer,* for appellee.

Rabb, J.—The appellee sued the appellant to recover damages for injuries alleged to have been sustained by him, resulting from a collision between one of appellant's electric street-cars, while the same was passing over its line on Chestnut street in the city of Columbus, and a delivery wagon in which the appellee was sitting, and which at the time of the collision was temporarily standing in said street, which collision is alleged to have occurred through the negligence of appellant's servants in charge of the car. The cause was put at issue, tried by a jury, verdict returned in favor of the appellee, appellant's motion for a new trial overruled, and judgment rendered against it on the verdict. The overruling

of appellant's motion for a new trial is assigned as error in this court.

One of the grounds of the motion for a new trial is the insufficiency of the evidence to sustain the verdict.

The complaint alleged that at the place where the accident occurred the space between the street railroad rail and the gutter was about the width of an ordinary carriage. The proof showed that it was fourteen feet. The complaint alleged that the street-car was running at the rate of fifteen miles an hour, a high and unreasonable rate of speed. The evidence most favorable to appellee showed that the car was running at a speed of six or seven miles per hour, and that that was the speed at which it ordinarily ran. The complaint alleged that the car was in charge of an incompetent and inexperienced mortoman, who had never operated a motor-car prior to the day of the accident. The evidence showed that the motorman who had control of the motor at the time of the accident was a new employe of the appellant, just learning the business; that the day on which the accident happened was his third day of trial as a motorman; that the company sent with him a competent and experienced motorman to teach him how to operate the motor, and he was present with him, standing within two and one-half feet of him, at the time the accident happened. The complaint alleged that the horse attached to the delivery wagon became frightened and unmanageable, and backed the wagon onto the track when the street-car was a distance of 400 feet away; that the horse and wagon were in plain view of the motorman for the entire distance; that those in charge of the car could and did see that the horse was frightened and unmanageable; that the appellee was powerless to control the horse or to prevent a collision; that the motorman saw appellee's peril in time to avoid the accident. The evidence most favorable to appellee, a boy of ten years, showed that he got into the delivery wagon to ride with another boy of thirteen years of age, who was in charge of the wagon delivering groceries for his

employer; that the boy in charge of the wagon drove it up by the sidewalk, fastened the lines in some way to the wagon, and left it about four and one-half feet from the car track, and went upstairs to deliver goods, leaving the appellee in the wagon alone; that he did not tie the horse; that it was a gentle animal, and had been used on the streets of Columbus, and been worked in a delivery wagon by this same boy, who then had charge of it, for four months previous to the accident; that, while the delivery boy was gone, the street-car turned the corner and came into Chestnut street, two and one-half blocks away; that the horse gave no manifestations of fright that were observable by the two motormen on appellant's car until the street-car passed Fifteenth street, when the horse suddenly began to shy and back; that the accident happened about forty feet south of Fifteenth street.

Appellee's witness, Elmer Brisben, who was seated on the sidewalk immediately in front of the horse, testified that he did not notice the horse until the car arrived near Fifteenth street; that the motorman was ringing the bell for Fifteenth street; that the horse started to back and the witness jumped over the railing to catch it, but the car hit the wagon before he could reach the horse. The delivery wagon had a top, and was standing in such a position that the motorman was unable to see the boy seated in the wagon. Said witness testified that when he observed the wagon one wheel was within about one foot of the track.

McPeak, another of appellee's witnesses, who was standing on the sidewalk opposite the place where the accident occurred, testified that when the car was within twenty or thirty feet of the wagon it stood about four feet from the track; that the horse shied and the collision occurred.

The new motorman, Shoemaker, testified that he saw the horse and wagon standing at the side of the street when he was one and one-half blocks away, and kept them under observation until the collision; that from the position of the wagon he could not see the boy; that he observed nothing

unusual about the horse until just as the car got to it, when it shied and backed the wagon against the car; that he turned on the brake at once, and stopped the car as soon as it could be done.

Walter Chitty, the old motorman who was with Shoemaker, testified that he was on the car with Shoemaker, teaching him the business; that he stood in the door of the vestibule, where he could see; that he saw the horse and wagon while the car was more than a block away; that when he first observed the wagon it stood four feet from the track; that the horse showed no signs of fright until the car was near it, when it suddenly shied and backed the wagon against the car.

There is no substantial conflict in the testimony of these witnesses, and it is perfectly plain from their evidence that, until the motorman was almost opposite the horse, and too late to avoid the collision, there was nothing about the horse's appearance or conduct that would naturally lead him to anticipate that he might not safely pass it.

The evidence without contradiction shows that the collision did not occur between the wagon and the front end of the car, but with the car step, indicating clearly that the wagon was backed against the car while it was passing. The facts testified to by appellee's witness Brisben illustrate the suddenness of the whole affair, and show with more clearness than the mere guess of witnesses in reference to the distance the car was from the horse when it first manifested fright. Brisben says that he was sitting on the sidewalk just in front of the horse. The instant he noticed the danger he leaped over the railing to catch the horse, but before he could reach it the collision had occurred.

While it is true that the motorman in charge of the motor on the car in this instance was inexperienced, that fact of itself does not constitute negligence on the part of the street railroad company. It is necessary that men learn the business. The operation of motor-cars is not a natural gift,

and we can conceive of no other way in which the business can be learned than the one that was employed in this case by the company. They had taken the precaution to provide a skilled and experienced motorman to accompany the novice and teach him the art, and presumably to see that no harm came from his inexperience; this man was present at the time the accident occurred, and it is not manifest from the evidence that if the experienced motorman had been in control of the motor at the time, the accident would not have happened just as it did. The evidence fails to show any negligence upon the part of the motorman, inexperienced though he was, that proximately caused the collision. The negligence bringing about the accident was the negligence of the delivery boy in leaving the horse unsecured, alongside the street railroad track. The motorman had the right to assume, when he saw the horse and wagon standing beside the track, and out of danger, that he could safely pass without slackening the speed of his car; that either the horse was properly secured, or that it would not frighten at the car. *Citizens St. R. Co.* v. *Lowe* (1895), 12 Ind. App. 47; *Kessler* v. *Citizens St. R. Co.* (1898), 20 Ind. App. 427; 27 Am. and Eng. Ency. Law (2d ed.), 71, and cases cited.

The evidence in this case was not sufficient to sustain the verdict of the jury, and appellant's motion for a new trial should have been sustained.

Cause reversed, and a new trial ordered.