TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY *v.* ELLSBURY.

[No. 9,639. Filed June 27, 1919. Rehearing denied December 12, 1919. Transfer denied November 17, 1920.]

1. STREET RAILROADS.—*Crossing Accidents.—Discovery of Peril. —Duty of Motorman.—Instructions.*—An instruction that it is a motorman's duty, on discovering a person's peril at a crossing, to stop his car, if possible, to avoid inflicting injury, is erroneous, since he owes only the duty to use every reasonable means to prevent the threatened injury. pp. 169, 174.

2. TRIAL. — *Instructions. — Assumption of Facts. — Last Clear Chance.*—In an action for injuries sustained at a street railroad crossing, an instruction assuming that plaintiff, when near the track, was in a position of danger, was erroneous as invading the province of the jury. pp. 170, 172.

3. STREET RAILROADS.—*Crossing Accidents.—Last Clear Chance. —Constructive Knowledge of Peril.—Instructions.*—In an action for injuries sustained at a street railroad crossing, it was error to instruct on the theory of last clear chance based on constructive knowledge by the motorman of plaintiff's peril, where the chance of the plaintiff to avoid the injury was later than that of the motorman. p. 173.

4. TRIAL. — *Instructions.* — *Applicability to Case.* — *Last Clear Chance.*—Instructions on last clear chance not addressed to any theory of the complaint nor to any evidence given in the case, are erroneous.  p. 175.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Action by Francis M. Ellsbury against the Terre Haute, Indianapolis and Eastern Traction Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*David E. Watson, Hord & Adams* and *W. H. Latta,* for appellant.

*Charles B. Clarke, Walter C. Clarke* and *Albert Wray,* for appellee.

ENLOE, J.—This was an action by appellee to recover damages for injuries sustained by being struck by one of appellant's cars at a highway crossing.

The cause was tried upon an amended complaint in one paragraph, to which the appellant answered by general denial.   The trial resulted in a verdict for appellee, and appellant unsuccessfully moved for a new trial.  The only assigned error relied upon in this court is the action of the trial court in overruling the motion for a new trial.

Appellant in its brief, under "Points and Authorities," assails two of the instructions given by the court to the jury as being erroneous, viz., instructions Nos. 15 and 24.

Instruction No. 15 so given was as follows:   "It is the duty of those in charge of an interurban car, and particularly the motorman in operating such car, approaching a frequented crossing of a highway, to exercise ordinary care and diligence to ascertain whether the track ahead is clear, and it is his duty to give the track ahead such attention as will enable him, in the exercise of ordinary care, to know its condition, and to avoid, if

MAY TERM, 1920. 169

Terre Haute, etc., Traction Co. *v*. Ellsbury—74 Ind. App. 167.

possible, inflicting injury to a person in a dangerous position, or in peril. If you find from the evidence that, upon the day and at the time of the accident, it was clear, and the view at the point where it occurred was unobstructed, so that the motorman could have seen plaintiff on or near the track, if he had exercised ordinary diligence, and further find that the motorman had knowledge of the conditions existing at the place of the collision, and he could have seen the plaintiff's peril in time to have stopped the car and prevented the accident by the exercise of reasonable care, then I instruct you that his failure to do so, thus causing the injury, would constitute negligence upon the part of the company, defendant, and you should find for the plaintiff, unless you further find that plaintiff, by his own negligence caused, or contributed to the injury complained of."

In the first part of this instruction the court attempts to state the law as to the duty of a motorman as to observing and knowing the condition of the track ahead of the car, etc., and it plainly tells the jury that it is the duty of such motorman, upon discovering danger ahead, *or a person in a dangerous position, or in peril,* to stop his car, *if possible,* to avoid inflicting injury upon such person.

This instruction was an attempted statement of the law as applied to cases coming within the doctrine of last clear chance. In the case of *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 579, 96 N. E. 973, 978, 98 N. E. 1091, the court in speaking of the application of this doctrine said: "There is a general duty resting upon a person in charge of a street car to use care to prevent injury to all persons and property with which it is likely to come in contact, and such care must be proportionate to the danger incident to its operation. This duty is a general one, and rests upon

**170    APPELLATE COURT OF INDIANA,**

Terre Haute, etc., Traction Co. *v.* Ellsbury—74 Ind. App. 167.

the motorman at all times and under all circumstances during the time he is operating such car; but the duty to take particular precautions to prevent injury to a particular person, who, by want of due care on his part, has exposed himself to immediate threatened danger, or is about to do so, is a special duty which arises out of the exigencies of the situation. It is the failure to discharge this particular duty, which gives room for the application of the doctrine of last clear chance, by which the company, in such a case, is held liable to a person, who, by want of due care, has exposed himself or his property to the danger of receiving such injury. The particular situation of the parties prior to the injury must be such as to give rise to this special duty to the particular person injured, some appreciable time before the injury occurs. * * * From the time the emergency arises until the injury occurs, the motorman must use every *reasonable* means to prevent the threatened injury." (Our italics.) This instruction was therefore erroneous as to the statement of the duty of appellant's motorman, upon discovering a person in a position of peril.

The latter part of said instruction evidently was intended to relate to the supposed facts of the case, within the issues and evidence adduced. It will be noted that, as to the position or location of appellee at a time just prior to the accident, it is in the alternative, the disjunctive "or" being used. This has the effect of making this instruction double, of combining two instructions in one, in one of which instructions the appellee would be located "on" the track, and in the other "near" the track. It is the effect of this instruction as it relates to the latter position— "near the track"—that we wish to now notice. In effect, it told the jury that: "If you find from the evidence that upon the day and at the time of the accident

it was clear, and the view at the point where it occurred was unobstructed, so that the motorman could have seen plaintiff near the track, if he had exercised ordinary diligence, and further find that the motorman had knowledge of the conditions existing at the place of the collision, and that he could have seen plaintiff's peril in time to have stopped the car and prevented the accident, by the exercise of reasonable care, then I instruct you," etc. This instruction is clearly erroneous by reason of the assumption therein contained. The jury, by this instruction, were not required to find whether the appellee, while "near the track," was, or was not, in a position of peril, real or apparent. Under the authority of the Croly case, *supra,* and in fact under all the authorities, no special duty could arise in favor of appellee, and against the appellant, until appellee was in such position of peril and so discovered by the servant of appellant. Whether the appellee, while near said track, was in a "situation of peril" was an essential fact for the determination of the jury, and the court also erred in assuming this fact, and thereby invading the province of the jury.

As said in the Croly case, *supra,* there is a general duty resting on the motorman to observe persons and property with which his car is likely to come in contact, but if this general duty should be extended to the point where it would become a special duty, and thereby bring all such cases as the instant one under this instruction within cases now falling within the doctrine of last clear chance, as *now* applied, the effect of such extension would be to entirely wipe out and destroy the doctrine of contributory negligence. This instruction not only assumes that the appellee was in a position of peril "near the track," but would hold the company liable for the failure of the motorman to discover such peril, by the use of ordinary care, although the situation of ap-

pellee near said track, so far as this record discloses, was not such at the time said car was approaching his said location as to probably in any way interfere with the operation or safety of said car, or safety of passengers thereon, whose safety was of first concern to said motorman at said time.

Instruction No. 24, also complained of by appellant, was as follows: "If you find from the evidence that plaintiff was riding on a wagon, and was on or near defendant's tracks, and that the defendant's interurban car was approaching, and that the motorman in charge of such car saw said wagon, or the horses hitched thereto, on, or near the track of defendant's railroad in front of said car, or by the exercise of due care could have seen said wagon or horses, and saw, or by the exercise of ordinary care could have seen that the occupant of said wagon was in apparent peril, then it was the duty of said motorman to stop said car or slacken the speed thereof so as to avoid a collision, *if it was possible to stop said car or slacken the speed of the same.*" (Our italics.)

This instruction like the one heretofore considered is double. It considers the appellee as having been in either of two places, viz., *on the track of appellant,* or *near the track of appellant.* No distinc-

2. tion is made, as to the duty of appellant's servant, the motorman, in charge of said car, as to these positions. By this instruction the jury were told that, if the motorman in charge of the car saw the wagon, or the horses hitched thereto, near the track of appellant's railroad, in front of said car, or by the exercise of due care could have seen said wagon, or the horses, and saw, or by the exercise of ordinary care could have seen that the occupant of said wagon was in apparent peril, then it was the duty, etc. This instruction was evidently given as being addressed to the doctrine of

last clear chance. It is bad for several reasons. It *assumes* that appellee was in peril, when he and his team were "near the track." How near the track we are not told, neither are we, in any way, in the record before us informed as to the character of the peril. The record shows without contradiction that on the day in question appellee was using his wagon and team assisting in hauling corn and in filling a silo, located a short distance from where he was struck and injured; that he had a "hay frame" on his wagon, upon which to load the corn and haul it to the cutter; that he had just unloaded his load and started to the field north of the tracks of appellant for another load; that he drove out of the barnyard gate and turned north into the highway crossing appellant's track; that it was about 4 o'clock p.m. and the time for the regular limited car of appellant, going east; that the car which struck the appellee was appellant's regular limited 4 o'clock car; that, for some distance west of said crossing, appellant's track going east is down grade; that said car was running at least thirty-five to forty miles per hour (the complaint charges sixty miles per hour) ; that said highway approaching said crossing from the south is comparatively, level; that from a point thirty-three or thirty-four feet south of said crossing, the *rails* of appellant's track could be seen for a distance of 400 to 500 feet to the west, and a person walking on said track, or a car approaching, from said point, could be seen 500 to 600 feet.

The record is absolutely silent, so far as appellee's case is concerned, as to any care whatever on his part on approaching this crossing. No witness even 3. intimates in his testimony concerning the accident that the appellee stopped, looked, listened, or gave any attention whatever to his safety in approaching said crossing until he was practically in the act of

crossing the same. One witness for the appellee, who was working near the crossing, testified that, when she heard the car whistling the danger signals, she looked up, and that appellee was standing up in his wagon, whipping his horses to get across; in this she is corroborated by two witnesses who testified for appellant, but who place the point at which he began to whip his horses as about twenty feet before he reached the track, and the car was then only about 200 feet away. Considering the speed at which this car was shown to have been running, there is no evidence even tending to show that the car could have been stopped and the collision avoided after the motorman saw the appellee approaching said crossing. No testimony was offered upon that proposition. It was not within the case as attempted to be made by the appellee. This was not a case where the motorman could be charged with constructive knowledge of the danger of appellee. Before actually entering upon the track, knowing the crossing as the record shows he did, he, had be been exercising due care and caution for his own safety, for aught that appears in this record, could have stopped his team and prevented the accident. His chance to avoid injury, had he been in the exercise of proper care and caution for his own personal safety, as shown upon the record, was even later than any chance the motorman could have had in the case. *Indianapolis Traction, etc., Co.* v. *Davy* (1915), 57 Ind. App. 532, 103 N. E. 1098.

Lastly, the jury were told in this instruction that it was the duty of the motorman to stop his car and avoid collision, *"if it were possible so to do."* (Our

1. italics.) This is not the law. Even if it should be conceded that under the facts of this case there arose the duty for the motorman to stop the car to avoid injuring appellee, yet that duty only required him to exercise reasonable care in an endeavor to ac-

complish that end. This instruction puts the limit *at possibility,* and left it to the jury to say whether or not it was possible. In cases like this, the motorman is called upon to act instantly; he has no time to weigh and consider the matter and, even though he should do what a reasonably prudent man would have done under the particular circumstances of the case, yet, if his judgment was at fault, if he made a mistake of methods or means, the master would be liable. If by error of judgment, in the emergency of an impending collision, he set the brakes a little too tight, thereby causing the wheels to lock and slide on the rails, thereby reducing the area of friction on the wheels, whereby the car travels farther than it would have done had such wheels not been locked, such mistake of judgment on his part would fix the master's liability to one injured thereby. This cannot be the law. Corporations can only employ human agents, mortal men, to act for them in the control of such agencies, and infallibility of judgment has not been accorded to man; that is reserved to Deity, and he has not as yet taken control of such human agencies as railroads to operate them.

The language of the complaint is, as to the charge of negligence therein contained: "Negligently and carelessly ran and operated such car eastwardly over and along said track at a rapid and highly dangerous rate of speed, to wit, sixty miles an hour, negligently and carelessly failed and omitted to sound any gong or ring any bell, or give any warning of its approach * * *. That defendant's motorman in charge of said car saw, or could have seen by the use of due diligence, the approach of plaintiff upon defendant's said track, and said motorman could have stopped his car without colliding with plaintiff and his said wagon, if he had attempted so to do. That plaintiff's said injuries occurred through no fault or negli-

gence on the plaintiff's part, but the whole fault thereof was due to the negligence of defendant and its said motorman, in running said car at said point, at the rate of sixty miles per hour, without sounding any gong, or ringing any bell, or giving any warning of its approach," etc.

The averment above quoted, that "defendant's motorman, * * * saw, or could have seen, * * * the approach of plaintiff upon defendant's said track, and * * * could have stopped the car," etc., is without any legal force. It is not averred, even as a conclusion, that appellee, while approaching said crossing, was in a position of peril. No fact or facts are alleged showing any duty resting upon said motorman to stop said car, because of the condition or situation of appellee, while approaching said crossing. The theory of the complaint is that the appellant was running and operating its car at the time in question at such a high and dangerous rate of speed that it could not have been stopped and the injury avoided. This was *original negligence,* and as such charged in the complaint as being the cause of appellee's injury. The foregoing instructions are not addressed to any theory of the complaint, nor is there any evidence to which they can properly be said to have been addressed, and neither of them should have been given, for this reason also.

There is some evidence in the record tending to sustain the material averments of the complaint, but, for the error in giving the above-numbered instructions, this cause is *reversed and remanded,* with directions to sustain appellant's motion for a new trial and for further proceedings.

Batman, C. J., Nichols, P. J., and Dausman, J., concur.

McMahan and Remy, JJ., concur in result.

### CONCURRING OPINION.

McMahan, J.—(dissenting in part) I agree that the giving of instruction No. 24 constituted reversible error, but the majority opinion misconstrues instruction No. 15 and gives it a strained and technical construction when it says: "It plainly tells the jury that it is the duty of such motorman, upon discovering danger ahead, or a person in a dangerous position, or in peril, to stop his car, if possible, to avoid inflicting injury upon such person." The court simply and correctly informed the jury that it was the duty of the motorman to use ordinary care to know the condition of the track, and to avoid inflicting injury to a person in a dangerous position. The jury could not have been misled by this instruction when read in connection with instruction No. 23, which was given to the jury at the request of appellant, where the jury was informed that, when the motorman saw a person driving toward the track, he had a right to presume that such person would not drive upon the track and into a place of danger until it became apparent to the motorman "that such person is about to or will drive upon, or in close proximity to the car; then, it is the duty of the motorman to slow up or stop his car, *if it is possible* in the exercise of ordinary care, and prevent a collision."

This instruction is in harmony with the holding of this court in *Citizens' St. R. Co.* v. *Lowe* (1894), 12 Ind. App. 47, 39 N. E. 165, where the court said: "When the motorman, or those in charge of the car, see the frightened horse and the vehicle to which he is attached in front of such car upon the same track, and that the occupants of the conveyance are in apparent peril, due care requires that the car be stopped if it is possible to do so. In such a case it is required of those

in charge of the motor to slacken the speed, and if necessary, to avoid injury, to stop the car entirely."

There is no dispute or conflict in the evidence in so far as showing that the appellee was in a position of peril just before he was struck by appellant's car. The motorman admits that, when he first saw appellee, the car was from 300 to 400 feet away from the crossing, and that he at that time saw the appellee whipping his horses in an effort to get across the tracks, at which time he says appellee was about thirty-five feet from the track. He therefore knew the peril of appellee. There was no error in the court assuming that appellee was in a dangerous position.

Remy, J., concurs in the concurring opinion.